## ANTHONY REYBOLD v. JOHN J. HENRY.

IF in a contract of sale of a livery stable with the right and privilege of furnishing a large hotel in the city of Washington with all the horses and carriages required for its guests, for twenty-four thousand dollars, the seller falsely and fraudulently represents to the purchaser that he has such a right and privilege by contract with the proprietors of such hotel. and that he has the right to sell and transfer it with the livery stable, and that such right and privilege alone is worth five thousand dollars, it will be a severable contract, and five thousand dollars, the amount separately and distinctly apportioned at the time by the seller, as the price and value of such right and privilege, may be recovered back by the purchaser in an action of *indebtitatus assumpsit* for money had and received to his use by the seller.

ASSUMPSIT on a contract between Anthony Reybold and John J. Henry, in which the latter sold to the former a livery stable in the city of Washington, with the horses, carriages and harness appertaining to it, together with the right to supply Willard's Hotel in that city with all the horses and carriages required by the guests of it, for the sum of twenty-four thousand dollars. The defendant valued the stable, horses, and carriages at twenty thousand, and the right to supply the hotel, as just stated, at five thousand dollars. At the time of making the contract, the defendant represented to the plaintiff that he had acquired that right and privilege from the person from whom he had purchased the stable, and was then doing it under a contract with the proprietors of the hotel made for the purpose by the person from whom he had purchased the stable, and that he had the right to sell and transfer that right with the stable. The contract was made at the hotel, and during their conversation on the subject, one of the proprietors of it passed through the hall, when the plaintiff proposed to the defendant that they should speak to him about it and see that the matter was all right, but the defendant replied that there was no use in saying anything to him about it, for he was a gruff man and would give them no satisfaction about it, but it was all right. The plaintiff then offered the defendant twenty-four thousand dollars for it, which was accepted, and the contract was concluded between them. In a short time afterward the plaintiff learnt from the proprietors of the hotel that they had no agreement with the defendant to furnish their house with horses and carriages, but they had the right, and were in the practice of getting them wherever they chose, and that up to the month of March preceding the making of the contract between the plaintiff and the defendant, they were in the habit of sending to the defendant's livery stable for horses and carriages for their guests, but they had had so much trouble in getting them when wanted, and they were so inferior and in such bad order that they were compelled to send to other stables. The

plaintiff had paid the price agreed upon to the defendant, and the action was now brought to recover damages for the alleged fraud and deception practiced upon him in the contract of sale. The declaration contained several special, as well as the common counts in an action of assumpsit.

*Gordon, for the plaintiff.* In every sale there was an implied warranty that the vendor has a title to, and a right to sell, the goods. 1 *Pars. on Contr.* 457, 462, 463 *in notes.* But in this case the defendant expressly assured the plaintiff that he had the right to furnish all the horses and carriages required for the accommodation of the guests at the first hotel in Washington, and the right to sell and transfer it with his livery stable to the plaintiff, and that it was worth five thousand dollars, and doubtless it was, if he had possessed such a right, and could have transferred it to him. But it had been proved to be a deliberate and fraudulent misrepresentation, and knowing it to be so at the time when he made it, it clearly showed according to his own estimate of the value of the property without such a right and privilege, that he deliberately defrauded him out of five thousand dollars by that misrepresentation alone, to say nothing of his gross misrepresentation of the value of the livery stable without it.

*Higgins, for the defendant.* Although it had been alleged on behalf of the plaintiff, that the defendant had represented to him at the time of entering into the contract, that he was possessed of the right by virtue of an agreement with the proprietors of Willard's Hotel, of furnishing all the horses and carriages required by their guests at that house, not a particle of evidence had been produced to prove that he had ever said to the plaintiff that he had any such right or privilege by virtue of any contract with them for such a purpose, and that it was upon that allegation thus laid in the declaration, the whole claim of the plaintiff to recover in the action rested. So far from there being any proof of such a representation, the evidence

simply was that he stated to the plaintiff that he had the right and privilege of furnishing that house with such horses and carriages, and that he had acquired it from Mr. Conkling, from whom he had purchased the livery stable, and that he had the right to sell and transfer it with the stable. And had any evidence been adduced to invalidate that statement? Not a particle; and none could be, for it was strictly true as he represented it, for he had acquired such a right and privilege in the mode stated by him, and the right to sell and transfer it with the stable as he had acquired it. But if it was a mere right and privilege which he, and Mr. Conkling before him, was permitted to enjoy by the special favor and kindness of the proprietors of that house at their will and pleasure, it involved no legal right whatever, and furnished no legal remedy or redress for the suspension or revocation of it either in their hands, or in the hands of any other person to whom either of them might assign or delegate it. But whatever the right or privilege may have been, there was no proof before the jury as to what it really was worth, had it been transferred to the plaintiff, or what he had actually lost by not obtaining it with the stable, and by what rule were the jury to estimate the damages which the plaintiff had sustained in consequence of such a disappointment? Where the contract was one by which a plaintiff was to receive, not money, but the transfer of certain property, or compensation in certain services, the value of the original consideration was not to be inquired into, but the value of the property or services was the measure of the damages, because that was the remuneration fixed by the agreement. *Sedw. on Damages* 203. But as he had before said, there was no proof whatever before the jury as to the actual value of such a right or privilege.

*Bradford, for the same.* Notwithstanding there were a multitude of special counts in the narr drawn with great subtilty and ingenuity, they were, nevertheless, all based on one and the same entire contract, for in each and all, it

was alleged as one entire contract in which the defendant falsely represented to the plaintiff at the time of entering into it, that he had the right under agreement with the proprietors of the hotel named, to furnish all the carriages and horses which should be required for the guests of their house, and that he had the right to sell and transfer it to him with the stables, and such right was worth five thousand dollars. The plaintiff, however, had utterly failed to prove that allegation in all his special counts, for the mere right or privilege to do so by the simple favor and indulgence of those proprietors, so long as they saw proper to patronize the plaintiff in his particular line of business, without any contract or agreement in regard to the matter between them, was a very different thing from an actual contract between them for that purpose. The plaintiff, therefore, could not recover on the special counts, because he had failed to prove the entire contract as laid in them in a most material and essential particular, but had proved a special contract of a very different nature, and the variance in that respect was consequently fatal to his right to recover on any one of those counts. And as to the common counts for money had and received, he could not recover upon them without proving a total failure of the consideration of the contract, or that the property which he obtained in exchange for his money under the contract, was without any value whatever, which was not pretended. And in the action for money had and received and paid by the plaintiff, on one entire contract, to the defendant, he must recover the whole, or none at all; for he cannot sever his demand and recover for the failure of a part of the contract, or of a part of the consideration for which he paid the money to the defendant. *Indebitatus assumpsit* for money had and received could not be maintained to recover money paid on a contract which had been in the main, or partially performed, or for goods bought and paid for, a portion, or even the whole of which, turns out to be of less value than they were represented to be by the seller, nor if the purchaser has received any benefit from the contract under which it

was paid, 2 *Archb. N.P.* 186. Nor could the plaintiff recover for any loss which he had sustained in the sale afterward of the horses which he bought of the defendant, without proof of an express warranty of them by the defendant.

*Gordon, in reply.* The question whether a contract is entire, or is separable, is often important, for a contract may consist of many parts, and these may be considered as parts of one whole contract, or as so many distinct contracts entered into at one time and contained in the same instrument or agreement, but not thereby made one contract. No precise rule can be stated by which this question in a given case may be settled. Like most other questions of construction, it depends on the intention of the parties, and this must be discovered in each case by considering the language employed and the subject matter of the contract. If the part to be performed by one party, consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contract will, in general, be held to be severable. And the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature simple and entire. But the mere fact that the subject of the contract is sold by weight or measure, and the value is ascertained by the price affixed to each pound, or yard, or bushel, of the quantity contracted for, will not be sufficient to render the contract severable. And if the consideration to be paid is single and entire, although the subject of the contract may consist of several distinct and wholly independent items, the contract will not be severable. 2 *Pars. on Contr. Secs.* 29, 30, 31, 32, 33.

*The Court, Gilpin C. J., charged the Jury.* According to the evidence the contract between the parties was entirely verbal, and it would be for the jury to decide upon the proof before them, what the defendant meant and what the

plaintiff understood by the statement made by the former to the latter, that he had the right and privilege of furnishing the hotel mentioned with horses and carriages, and that he had the right of selling and transferring it with the livery stable, and that such right and privilege was itself worth five thousand dollars. It would also be for the jury to consider what the defendant intended the plaintiff should understand and infer from such a statement at the time when he made it to him, for the testimony in regard to it was uncontradicted, and was uncontroverted by the counsel for the defendant, and the only question was as to the meaning and effect of it. It would seem that the plaintiff understood the representation to import that the defendant had some positive agreement, understanding, or arrangement with the proprietors of the hotel to that effect, when he suggested to him on the appearance of one of them in the hall at the time it was made, that they should step up and speak to him about it, and ascertain if he would confirm the representation, and it would also seem from the defendant's reply to his proposition, that it was not worth while to do so, but that it was all right, that his wish and intention was that the plaintiff should so understand it; and if such was the view which the jury should take of that matter, it would be sufficient to sustain the allegation of the plaintiff in his declaration, that the defendant represented to him that he had a contract or agreement to that effect with the proprietors of that hotel. If, however, the jury should be of the contrary opinion, and that the defendant did not mean to be so understood by the plaintiff, and that all he meant to say in regard to the matter merely was, that he had a right in common with all other livery stable owners in the city of Washington, of furnishing horses and carriages to that hotel, without having, however, any understanding, or arrangement, whatever with the proprietors of it on the subject, it would not sustain such an allegation, and the plaintiff had failed in his proof on all the special counts contained in his declaration, and also on the common

counts, and could not recover from the defendant in the action any portion of the money paid for either the stable, or that right and privilege; because in that view and aspect of the matter, he had failed to prove any such false or fraudulent misrepresentation in regard to it, as would entitle him to recover. But supposing the other to be the view which the jury should take of the matter, and that the defendant did intend to represent to the plaintiff that he had some such peculiar or exclusive right and privilege by agreement with the proprietors of the public house referred to, which was alone worth five thousand dollars, then he was bound in law to make that representation good, and that he had such a right and privilege to sell and transfer with the livery stable to the plaintiff worth that amount, at least; for there was a warranty implied in every sale that the seller has title to and in the thing sold, and he was bound to show it, and that too, even though there may be no fraudulent nor intentional misrepresentation on his part concerning his ownership, or title to it. If the subject matter of the sale had ceased to exist when the sale was made or agreed upon, the contract of sale would be void, and the purchaser would have a right to recover back his purchase money, although both parties were ignorant at the time of the contract that the thing had ceased to exist, and there was a total absence of any intentional fraud on the part of the vendor in the transaction; yet if the party having nothing of the kind to sell, bargains as if he had, and so induces the buyer to become the purchaser of it, and to pay him for it, that will amount to what is called a fraud in equity, and the purchaser will be entitled at law to recover back what he paid for it; for the common law in that respect followed the doctrine of the civil law, which would hold such a bargain and sale to be no contract. It was true, as a general proposition, that if the seller affirms that he is the owner of the thing sold, honestly believing himself at the time to be the owner of it, and so prevails upon or induces another person to buy it from him, an action could not be maintained against him on the ground

of false and deceitful misrepresentations, if the purchaser had been furnished by the seller with the information, or the means of ascertaining for himself the truth or falsity of the matter represented. But if the representations were manifestly fraudulent, or if, in other words, the seller was aware that his ownership or title to the thing to be sold and proposed to be transferred to the purchaser, does not exist, or is defective and worthless, and withholds the knowledge of that fact from the purchaser, that will be such a fraudulent concealment of the fact and of the truth as will vitiate and avoid the contract *ab initio*, that is to say, from the very inception of it, and entitle the purchaser to recover back the amount paid as the price for it. And in that view of the present case, the sum of five thousand dollars may be recovered by the plaintiff on the common counts filed in the action for money had and received, as the only misrepresentations alleged and relied on by the plaintiff, seemed to relate to the matter of the right and privilege of supplying the hotel referred to, with horses and carriages, it was, we consider, in that respect, severable in its character, so far as the consideration to be paid for the several and distinct matters included in the sale was concerned, the sum of five thousand dollars out of twenty-four thousand dollars, the aggregate sum paid for the whole that was contracted for by him, being the price and the amount separately and distinctly apportioned by the defendant to be paid to him for that alleged right and privilege.